**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| | ) Case No.: SACR 14-00192-CJC |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER DENYING DEFENDANT'S<br>) MOTION TO DISMISS AND MOTION<br>) TO TRANSFER VENUE |
| | ) |
| JOHN ARTHUR WALTHALL, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

## I. INTRODUCTION

On November 19, 2014, a grand jury charged Defendant John Arthur Walthall with solicitation to commit a crime of violence in violation of 18 U.S.C. § 373(a), namely the assault and murder (in violation of 18 U.S.C. §§ 111 and 1114) of five individuals: one

United States District Court Judge, A.G.; two Assistant United States Attorneys, M.T. and I.W.; and two special agents with the Federal Bureau of Investigation ("FBI"), B.H. and F.B.  Before the Court are two motions made by Defendant: a motion to dismiss the indictment on the grounds of duplicity and unconstitutionality, and a motion to transfer venue to the Western Division in this district.  (Dkt. 106.)  For the following reasons, the motions are DENIED.

## II.  DISCUSSION

### A.  Duplicity

Defendant argues that the indictment is duplicitous and should be dismissed.  "An indictment is duplicitous where a single count joins two or more distinct and separate offenses."  *U.S. v. Ramirez-Martinez*, 273 F.3d 903, 913 (9th Cir. 2001), *rev'd on other grounds*, *U.S. v. Lopez*, 484 F.3d 1186 (9th Cir. 2007).  Duplicity in an indictment is problematic because a jury can potentially find a defendant guilty "without having reached a unanimous verdict on the commission of a particular offense."  *Id.*  Defendant believes that the indictment is duplicitous in at least three ways.  First, it alleges that Defendants solicited the harm of five separate individuals.  Second, it alleges that Defendants solicited both the assault *and* murder of those five individuals.  And finally, Defendant argues that 18 U.S.C. § 111, which prohibits assault on certain federal officers or employees, creates three different assault offenses—one misdemeanor and two felonies—and that the indictment does not say which particular assault offense Defendant allegedly solicited.

In its opposition brief, the Government acknowledges that the indictment may be duplicitous, but argues that any duplicity can be easily remedied through appropriate instructions, including a unanimity instruction, and an appropriate verdict form.  The

Court agrees.  The Ninth Circuit has held that "a duplicitous indictment may be properly prosecuted and convicted if . . . the court provides an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed." *Ramirez-Martinez*, 273 F.3d at 915.  In other words, even though the indictment here appears to be duplicitous in at least one, and perhaps multiple, respects, the Court can easily remedy any potential harm by issuing a unanimity instruction and a verdict form which appropriately separates the potential offenses.  *See United States v. Savoires*, 430 F.3d 376, 380 (6th Cir. 2005) ("A duplicitous charge . . . is not prejudicial *per se*, because proper jury instructions can mitigate the risk of jury confusion and alleviate the doubt that would otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense.").

## B.  First Amendment

Next, Defendant argues that 18 U.S.C. § 373, which prohibits solicitation of a crime of violence, is unconstitutional because it criminalizes speech without including an "imminence-incitement" requirement like the one discussed in *Brandenburg v. Ohio*, 395 U.S. 444 (1969).  This argument is foreclosed by a long history of Supreme Court precedent which makes clear that the prosecution of criminal solicitation does not violate the First Amendment, even when a solicitation statute does not include an imminence requirement.  *United States v. Williams*, 553 U.S. 285, 297 (2008) ("Offers to engage in illegal transactions are categorically excluded from First Amendment protection."); *see also Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 251–52 (2002) ("The Government, of course may . . . enforce criminal penalties for unlawful solicitation.").

Defendant urges that the Court strike down § 373 on account of *United States v. Freeman*, 761 F.2d 549 (9th Cir. 1985).  In Freeman, the defendant was convicted of aiding and abetting violations of the tax laws based on seminars he would give explaining

how to submit false tax returns.  He sought to mount a First Amendment defense at trial, but the trial judge instructed the jury that "the question of free speech was not before it in any part of the case."  *Freeman*, 761 F.2d at 551.  The Ninth Circuit reversed and ordered the trial judge to permit a First Amendment defense.  It reasoned that "[w]here there is some evidence . . . that the purpose of [a] speaker or the tendency of his words are directed to ideas or consequences remote from the commission of [a] criminal act, a defense based on the First Amendment is a legitimate matter for the jury's consideration."  *Id.*  Because the defendant in *Freeman* had made some statements "that, at least arguably, were of abstract generality, remote from advice to commit a specific criminal act," he was entitled to present a First Amendment defense to the jury.  *Id.* at 552.

The Government argues that in this case, Defendant engaged not in abstract generalities but a concrete solicitation to kidnap, torture, and murder five individuals. Whether that is so will ultimately be an issue for the jury.  But Defendant is incorrect to assert that *Freeman* means that § 373 is unconstitutional.  Instead, *Freeman* stands for the simple proposition that if, at the end of trial, there is evidence in the record that Defendant engaged in "abstract generalit[ies], remote from advice to commit a specific criminal act," he is entitled to assert a First Amendment defense and have the Court instruct the jury on the issue.  *Freeman*, 761 F.2d at 552.  *Freeman* does not in any sense suggest that § 373 is unconstitutional on its face because it denies an individual his First Amendment rights.

Defendant also argues that § 373 violates the First Amendment because it provides,

It is not a defense to a prosecution under this section that the person solicited could not be convicted of the crime because he lacked the state of mind required for its commission, because he was incompetent or irresponsible, or because he is immune from prosecution or is not subject to prosecution.

18 U.S.C. § 373(c).  Defendant evidently believes that this provision "categorically prevents a First Amendment defense."  (Dkt. 106-1 at 7.)  But he does not say why this is so, and he cites to no case law suggesting that a defendant is denied his First Amendment rights because it is no defense to the crime that the person he solicited to commit the crime of violence lacked the state of mind to commit the crime, was incompetent or has immunity.  If Defendant wishes to argue that he did not in fact solicit the crimes he is accused of soliciting, he is free to do so, and § 373(c) provides no bar to that argument.

## C.  Case Assignment

Finally, Defendant argues that his case should be tried in the Western Division, and not in the Southern Division.  Although Defendant describes this argument as one concerning venue, venue is a matter of whether a case is tried in the proper *district*, not whether it is tried in a particular division within a district.  *U.S. v. Lukashov*, 694 F.3d 1107, 1119 (9th Cir. 2012) ("Proper venue is not a mere technicality . . . a defendant in a criminal case has a constitutional right to be tried in a district where the crime was committed.")  Defendant does not object to venue in the Central District.  Instead, he argues that as an administrative matter and in the interests of fairness, his trial take place in the Western Division.  For this proposition Defendant cites to General Order 14-03, which provides:

> Absent extraordinary circumstances, an indictment or information should be filed in the division in which the majority of the events, acts, or omissions giving rise to the crime or crimes charged occurred.

General Order No. 14-03 at 3.  Defendant argues the "majority of the events, acts, or omissions giving rise to the crime or crimes charged occurred" in the Western Division because that is where (at USP Lompoc) the alleged solicitation happened.  But as the Government correctly argues, Defendant was only at Lompoc—and only committed the

crimes alleged—because of his original trial and conviction in the *Southern Division*. Contrary to Defendant's argument, it was events in the Southern Division—not the Western Division—that "gave rise" to Defendant's ultimate solicitation.  And it is in this division where all the victims and nearly all the witnesses reside.  Indeed, even both attorneys reside *south* of the Southern Division.  The Court finds that, in these circumstances, the case was properly filed in the Southern Division.  Contrary to Defendant's assertion, the interests of justice and administration demand that this case stay here.[1]

## III.  CONCLUSION

For the foregoing reasons, Defendant's motions are DENIED.

DATED:      December 21, 2015

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[1] Defendant also expresses concern that he will be tried in the courthouse where A.G., the federal judge whose murder he allegedly solicited, sits.  As an initial matter, a similar concern was raised by Defendant in his recusal motion, which Judge Quackenbush denied on February 9, 2015.  (Dkt. 22.)  In any event, the Court will conduct thorough voir dire on the issue during jury selection to ensure that Defendant suffers no prejudice from being tried in the same courthouse where the judge he allegedly solicited to be murdered sits.