CHARLES BROWN (Bar No. 179365)
(E-Mail: charlesbrown@parzivalgroup.com)
1 South Fair Oaks Avenue, Suite 401
Pasadena, California 91105
Telephone: (626) 594-4874

Attorney for Defendant
JOHN A. WALTHALL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOHN A. WALTHALL,<br><br>　　　　Defendant. | Case No. CR-14-192-CJC<br><br>NOTICE OF MOTION; MOTION TO DISMISS FOR FAILURE TO PRODUCE MATERIAL WITNESS; EXHIBITS |

TO:   ACTING UNITED STATES ATTORNEY TRACY WILKISON AND ASSISTANT UNITED STATES ATTORNEYS FRED A. SHEPPARD AND CARLING DONOVAN:

　　　PLEASE TAKE NOTICE that on March 14, 2022 at 8:30 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Cormac J. Carney defendant John A. Walthall, will bring on for hearing the following motion:

**MOTION**

Defendant, John A. Walthall, by and through his attorney of record Charles C. Brown hereby moves this Honorable Court to dismiss the indictment in this case based on the government's inability to produce a material witness favorable to the defense.

This motion is based upon the attached memorandum of points and authorities, all files and records in this case, and such additional argument and evidence as may be presented at the hearing on the motion.

Respectfully submitted,

CHARLES C. BROWN, ESQ.

DATED: February 16, 2022    By  /s/ Charles C. Brown
                                CHARLES C. BROWN, ESQ.

1

## I. STATEMENT OF FACTS[1]

### A. Background

As has been well documented in this case, John Walthall was serving a lengthy prison sentence at FCI Lompoc when he was approached by two inmates, Antonio Rodriguez, and Crisanto "Diego" Trejos. Rodriguez and Trejos were also serving lengthy sentences: Rodriguez, a 30-year sentence for drug-trafficking; Trejos, 5 years for firearms trafficking. Both were influential figures within the prison hierarchy. Rodriguez served as the "shot caller" for the Hispanic inmates at the facility. Trejos was an influential, feared inmate as well. Both purported to protect Walthall from other inmates at Lompoc.

Unbeknownst to Mr. Walthall, both Rodriguez and Trejos were career jailhouse informants. The evidence showed that they had spent years attempting to sell the government information about supposed crimes in exchange for reductions in their sentences. Rodriguez, for example, had pitched information about at least seven different cases to the government over the years—all of which had been rejected.

In the instant case, Rodriguez and Trejos claimed that Mr. Walthall had solicited them to murder his sentencing judge. And they provided handwritten documents that Walthall had apparently written, with convoluted descriptions of the purported plot.

On June 3, 2014, at the FBI's behest, Rodriguez secretly recorded a conversation with Walthall. Walthall made disturbing statements about killing his judge and feeding him into a wood-chipper. He described torturing and killing the FBI agent and others in similar graphic fashion. But the recording showed Rodriguez repeatedly redirecting Walthall's more incoherent ramblings back to the judge and the supposed plot.

---

[1] The statement of is based on the discovery provided by government counsel and the trial and appellate record in this case.

2

Rodriguez is a central figure in this prosecution and his testimony is material to the defense. Hence, the defense has requested that he be made available for cross examination. Unfortunately, after having his sentence drastically reduced from 30 years to time served in exchange for his efforts in the Walthall matter, Mr. Rodriguez was deported to Mexico. A foreign deposition of Rodriguez was originally scheduled for December 7, 2021. *See* Dkt. 431, Joint Statement and Stipulation to Reschedule Video Deposition. On November 22, 2021, Rodriguez contacted his handlers at the FBI and advised them that he was diagnosed with cancer and unless the United States paid him for treatment he would refuse to sit for a deposition in this matter. In a text exchange with the FBI, Rodriguez writes:

> Steve I'm really sorry buddy but my life is not an option if I cant [sic] get the help I need [I'm] not going to testify and probably [Trejo] wont [e]ither unless he gets [h]is [R]ule 35 and that probably wont [sic] happen [e]ither.

Exhibit A, Text Messages from Antonio Rodriguez.

Rodriguez later requested $46,000 in exchange for agreeing to appear. He writes,

> Let me tell you something you guys were going to spend [$]100,000 grand to take me to the states but [$]46,000 to save my life . . .and I do need [$]19 thousand dollars to cover me [until] February and I [w]ill need the rest after the trial, I'm hoping Fred can help me if he [can't] well what do you think is More importante [sic] my life or the John Walthalls [sic] case Im guessing you know the answer.

*Id.*

At the request of the parties the deposition was continued to March 2, 2022. Unfortunately, on February 3, 2022, the government informed the Court and defense

3

counsel that "[a]t this time, Mr. Rodriguez has not indicated any change in his position to not sit for a deposition."

## II. DISCUSSION

### A. The Government Has Not Made Reasonable Efforts to Have Mr. Rodriguez, A Material Witness for the Defense, Available for Trial.

"[C]riminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). The government must therefore use "reasonable efforts to produce a government informant whose presence has been properly requested by the defendant." *United States v. Tornabene*, 687 F.2d 312, 315 (9th Cir. 1982) (quoting *United States v. Hart*, 546 F.2d 798, 799 (9th Cir. 1976) (en banc)).

The Courts have recognized the dangers of government reliance on informants in developing a criminal case. "A law enforcement system which regularly employs drug addicts and known drug dealers to solicit others to deal drugs in exchange for money, sentence reductions or other consideration which only the government can provide poses clear dangers." *United States v. Montgomery*, 998 F.2d 1468, 1472–73 (9th Cir. 1993). In *Velarde-Villarreal v. United States,* the Court warned,

> [t]he practice of the Government in employing agent-informers in narcotics cases is well known. We also know that such agents are usually not trained officers-often they are themselves addicts or former addicts. The Government must know that an eager informer is exposed to temptations to produce as many accused as possible at the risk of trapping

4

>  not merely an unwary criminal but sometimes an unwary
>  innocent as well.

*Velarde-Villarreal v. United States,* 354 F.2d 9, 13 (9th Cir.1965), *See also United States v. Bernal-Obeso,* 989 F.2d 331, 333 (9th Cir.1993) ("[t]he use of informants is fraught with peril").

Thus, as a matter of fairness, courts have often required the government to show reasonable efforts in producing the confidential informant at trial or for an interview when properly requested by a defendant, such as when the defendant asserts a plausible entrapment defense, or otherwise shows a need for the information.

*Velarde-Villarreal* sets forth the general rule concerning reasonable efforts required of the government to produce a confidential informant for trial:

>  If it were made to appear that the Government, through
>  reasonable effort, could have produced [the confidential
>  informant] and yet failed to do so when defendant demanded
>  such production, there should be a new trial. On the other
>  hand, if the Government was actually unable by reasonable
>  effort to produce him, * * * such inability would [not] require
>  a dismissal of the case, unless of course the Government itself
>  purposely saw to it that [the confidential informant]
>  disappeared * * *.
>
>  354 F.2d at 12.

Courts typically find the government's efforts to secure the presence of a confidential informant unreasonable when the government acts with negligence or intentional avoidance. *E.g., United States v. Tornabene,* 687 F.2d at 316 ("Whether through neglect or intentional avoidance, the government's actions, taken as a whole, do not reflect efforts which were designed to produce the informant."). Courts have also generally held that the government bears the burden of proving the reasonableness of

1    its efforts once it is shown that the government was under a duty to
2    produce.  *See Velarde-Villarreal,* 354 F.2d at 13.
3         Here, there is little doubt that Rodriguez's testimony is crucial to Mr. Walthall's
4    defense.  Mr. Rodriguez was at the center of the alleged conduct and instrumental in
5    encouraging and the later recording Mr. Walthall's alleged nefarious plot.  Rodriguez
6    provided all the information which the FBI possessed concerning the alleged plan.  In
7    addition, Rodriguez was in contact with Mr. Walthall pursuant to FBI instructions, with
8    the intent of soliciting the murder for hire scheme.  He is a percipient witness to the
9    offenses charged against Mr. Walthall.  Moreover, there was testimony indicating that
10   Mr. Rodriguez fabricated or exaggerated some statements to the FBI agents relating to
11   Mr. Walthall's predisposition and his purported fear of Mr. Walthall.  Rodriguez's
12   corroborating testimony or impeachment could significantly aid Mr. Walthall's
13   defense.
14        It is also apparent that the government is in the unique position to make
15   Rodriguez available for trial.  They know his phone number and appear to have been in
16   ongoing communication with him since he was deported to Mexico at the government's
17   behest.  Based on his communication with his handlers at the FBI he appears to still be
18   in there employ in some capacity.  Nor does it appear that he is unable to testify
19   because of his poor health.  Rodriguez made it clear that he would testify if the
20   government compensated him for his efforts.  Based on the drastically reduced sentence
21   Rodriguez received for his efforts in this case previously, it would not be the first *quid*
22   *pro quo* he has received from the government.
23        It is simply disingenuous and unreasonable for the government to now the throw
24   up their hands and inform the Court there is nothing that can be done to make
25   Rodriguez available for trial.  To the contrary, the government has the authority to issue
26   a temporary visa to allow Mr. Rodriguez into the country for his testimony.  The
27   government can also reimburse him for his travel expenses and lodging and a
28

6

reasonable per diem as with all witnesses. In short, the government has the means to make Rodriguez available for trial, they are simply choosing not to. Such lack of effort is fundamentally unfair to Mr. Walthall given the importance of Rodriguez to this case.

### B. The Defense is Deprived of the Fundamental Right to Compel Mr. Rodriguez to Testify.

The Sixth Amendment guarantees the accused much more than just the pro forma issuance of a subpoena. Rather, it stands for the general proposition that courts and the government have an affirmative duty to use the state's resources and powers to ensure a fair trial. *Johnson v. Johnson*, 375 F.Supp. 872 (W.D. Michigan 1974). Of course, the right to compulsory process is not absolute. Surely, elements of the ideal model of a criminal trial are subject to qualifications by competing constitutional provisions and by concessions to practicality made necessary by the complexity of the criminal process and by the fallibility of men and institutions. *Id.* But the mere fact that a witness it outside the United States is not the end of the Sixth Amendment inquiry.

An analogous example is seen in *Barber v. Page*, where the Supreme Court made it clear that increased cooperation between the states and the federal government vitiates the assumption that mere absence of a witness from the jurisdiction was sufficient ground for dispensing with a defendant's right to compulsory process. *Barber v. Page*, 390 U.S. 719, 723 (1968). The case law makes it clear that the rights embodied in the Sixth Amendment evolve as circumstances change and practical hurdles to enforcement are overcome. Moreover, even when witnesses are outside the United States, the government has an affirmative obligation to assist the defense in securing the testimony.

The government is in the best position to avoid the harm that would result from a key witness making himself unavailable for trial. The defense, with no efficient formal procedural mechanism in place to interview foreign witnesses and compel their testimony back in the United States, is left to the complete mercy and comity of the

host country in attempting to investigate and defend against very serious charges. But a grave problem exists when, as here, there are foreign witnesses with potentially exculpatory information does not wish to cooperate. In such a case, the absence of the right to compulsory process renders the prosecution in this case fundamentally unfair.

True, Title 18 U.S.C. § 3503 and Rule 15 authorize both sides to take depositions in criminal cases involving transnational crimes and introduce such testimony as substantive evidence if the witness is unavailable. Fed.R.Crim.P. 15(e). But the use of deposition testimony in criminal trials is disfavored, largely because such evidence tends to diminish a defendant's Sixth Amendment confrontation rights. *See United States v. McKeeve*, 131 F.3d 1, 11 (1st Cir. 1997) (the tension between the defendant's Confrontation Clause rights and the prosecution's need to obtain evidence from persons domiciled abroad, while new to this circuit, threatens to become a recurring theme); *United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir.1993); *United States v. Mann*, 590 F.2d 361, 365 (1st Cir.1978).

The Confrontation Clause's "central concern ... is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845, (1990).

In this case, the government is obligated to use reasonable methods to secure the attendance of Antonio Rodriguez at trial. Their failure to make reasonable efforts to secure his presence renders this prosecution fundamentally unfair. As such, the indictment must be dismissed.

### III.   CONCLUSION

This prosecution is fundamentally unfair and violates the Fifth and Sixth Amendments because a valid procedural framework does not exist under the statute for the defense to interface with foreign governments, have equal access to witnesses and

to compel them to testify before a neutral court.  For these reasons the indictment must be dismissed

             Respectfully submitted,

             CHARLES C. BROWN

DATED: February 16, 2022   By  */s/ Charles C. Brown*
             CHARLES C. BROWN