RANDY S. GROSSMAN
United States Attorney
FRED SHEPPARD, CBN 250781
CARLING DONOVAN, NYBN 5340484
Assistant United States Attorneys
Office of the United States Attorney
880 Front Street, Room 6293
San Diego, CA 92101

Attorneys for the United States

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:   14CR0192-CJC |
| Plaintiff, | Sentencing Date:   August 12, 2022 |
| v. | **SENTENCING MEMORANDUM** |
| JOHN ARTHUR WALTHALL, | |
| Defendant. | |

The UNITED STATES OF AMERICA, by and through its counsel, RANDY S. GROSSMAN, United States Attorney, and Fred Sheppard and Carling Donovan, Assistant U.S. Attorney, hereby files its Sentencing Memorandum.

## INTRODUCTION

On April 1, 2022, a jury again found Defendant John Arthur Walthall guilty of soliciting the murder of the Honorable Andrew Guilford, United States District Court Jude; Assistant United States Attorneys Ivy Wang and Mark Takla; and Federal Bureau of Investigation Special Agents Brad Howard and Frank Bernal. As more fully discussed below, the United States concurs with the U.S. Probation Office's recommendation that this Court again impose a 20-year term of imprisonment, to be served consecutively to Walthall's sentence in Case No. SA CR 09-213-A6. The United States also requests that the Court impose three years of supervised release and a $100 special assessment.

# GUIDELINES CALCULATION

The presentence report prepared by the probation department provides for a total offense level of 43. 2022 PSR ¶¶ 11-21. The United States concurs in the probation department's guideline calculations, which provides for a base offense level of 33, see USSG § 2A1.5, with upwards adjustments for the offer of money to undertake the killings, see USSG § 2A1.5(b)(1), and the victims' status as government employees motivating the solicitation, see USSG § 3A1.2(b). The final offense level of 43, when coupled with Walthall's Criminal History Category III, results in a guideline range of life imprisonment.[1] Neither the United States nor the probation department believe a downward departure or variance is warranted.

# SENTENCING RECOMMENDATION

As provided at trial, Walthall stands before this Court convicted of soliciting the murder of multiple federal employees because of their involvement in his previous prosecution. Simply put, the were targeted for showing up to work and doing their job.

A. **Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The nature and circumstances of this crime are interwoven in Walthall's history and overarching desire for revenge. As provided in the presentence report, the sentencing in the underlying matter, and touched upon in this trial, Walthall had previously undertaken efforts to inflict violence on those involved in his previous prosecution. Those efforts were thwarted when a Mesquite police officer found Walthall at a gas station; but not before he

---

[1] An argument could be made that the total offense level should be 47 based on § USSG 3D1.2. According to Application Note 8 of that section, where a single count provides for the commission of several offenses, you separate into groups those harms covering separate victims. Each victim would represent a single group with the highest offense level applicable (offense level 43), which would provide for five groups of solicitation to commit murder (offense level 43). Each group (victim) would equal one unit according to USSG § 3D1.4, resulting five total units (an additional four levels). As a result, the total offense level would be 47 (Offense Level 43 + 4 levels). However, given the current guideline range of life, the United States will forgo this argument.

was able to secure three identical handguns, three extra barrels, multiple magazines, a fake silencer, multiple cellphones and a book devoted to evading detection generally. Walthall's ability to obtain these items while on pretrial release during his prior prosecution was telling in that he did so through either a surrogate or the use of another's identity. In discussing his arrest in Mesquite with these items, Walthall told Antonio Rodriguez in recorded conversation at Lompoc prison that he "would have killed them all. As many as I could have taken out," referring to others involved in his underlying prosecution and conviction for fraud.

As the Ninth Circuit Court of Appeals stated in their memorandum affirming Walthall's prior conviction, "His apprehension in Nevada under a false name in possession of ten cell phones with different area codes, multiple weapons including a 'silencer,' and a book entitled How to Be Invisible demonstrate not only that he is a confirmed criminal, but a dangerous one at that." See *United States v. Walthall*, 580 Fed. Appx. 611, 613 (9th Cir. 2014).

While Walthall may have initially hoped to thwart his prior prosecution by kidnapping and killing those involved, it was revenge that was on his mind after being convicted. That was on display in Richard Nickel's testimony, where the Court heard of Walthall soliciting others to kill those involved in his underlying prosecution before and after he was convicted. Walthall brought that desire for revenge with him to Lompoc prison in 2012. Over time, Walthall recruited and solicited others to kidnap, torture, and kill those named in the indictment and several others, including family members and coworkers of the named victims, as well as his own defense attorney in the prior prosecution.

More telling of Walthall's character, and his undiminished desire for revenge and harm to others, is his conduct after being charged with the instant offense. Even while awaiting trial in this matter, Walthall continued to solicit the murder of the named victims and others. As Jonathan Oechsle, one of Walthall's cellmates after being charged in the current case, testified, Walthall continued to express his desire to kill those involved in his underlying prosecution.

Walthall's unflinching, undiminished craving to kidnap, torture, and kill those involved in his prior case, as well as their family members, is something that cannot be overstated. That continued pursuit by Walthall, despite all that has been done to dissuade him, clearly supports the recommendation of both the United States and the probation department in this matter.

### B. To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

In evaluating the need to reflect the seriousness of the offense, it is hard to find any mitigation in Walthall's attempts to have others kidnap, torture and kill individuals for simply doing their job. But more than that, Walthall repeatedly expressed a want to have not just the named victims killed, but family members as well: "I want to uproot Brad Howard, root and branch. I want to kill him, his father, his fucking wife, and his fucking kid." As the probation department summarizes in its letter to the Court, "The instant offense itself, standing alone, demonstrates his disrespect for the law because he sought to have the intended victims murdered for performing the duties of their respective offices, and the offense was committed while he was in prison for his prior federal offense." Dkt. No. 482, p. 4. Simply put, Walthall doesn't just lack respect, he goes further by soliciting harm to those that have dedicated themselves to public service and the rule of law. Just punishment in this case must make clear that this cannot be tolerated.

### C. To Afford Adequate Deterrence to Criminal Conduct and Protect Public from Further Crimes of Defendant

It's unclear whether any sentence imposed by this Court will deter Walthall from continuing to try to harm those involved in his prosecution. But this Court's sentence should attempt to do so and also make clear that those working in the criminal justice system can never – under any circumstances, much less a desire for revenge – be targeted.

### CONCLUSION

Based on the foregoing, the United States recommends this Court again impose a sentence of 20 years in custody followed by a three-year term of supervised release, and a

$100 special assessment. The United States further requests that conditions of supervised release include that he refrain from any contact with any of the victims in this matter, as well as their family, outside of correspondence necessary for legal filings. In addition, given the preparations that Walthall has undertaken at various times in his pursuit to kidnap and kill, the United States request that Walthall, his residence, and his vehicle be subject to search with or without probable cause by law enforcement or reasonable suspicion by law enforcement.

DATED: July 26, 2022

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

/s/ *Carling Donovan*
Carling Donovan
Assistant U.S. Attorney

Fred Sheppard
Assistant U.S. Attorney