CHARLES C. BROWN, ESQ. (Bar No. 179365)
(E-Mail: charlesbrown@parzivalgroup.com)
1 South Fair Oaks Avenue, Suite 401
Pasadena, California 91105
Telephone: (626) 594-4874

Attorney for Defendant
JOHN WALTHALL

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOHN WALTHALL, <br><br> Defendant. | Case No. CR 14-192-CJC <br><br> **DEFENDANT'S POSITION RE: SENTENCING FACTORS** <br><br> Date: September 12, 2022 <br> Time: 9:00 a.m. |

Defendant JOHN WALTHALL by and through his counsel of record, Charles C. Brown, Esq. hereby submits his Position Re: Sentencing and for the Court's consideration of the sentencing factors set forth in 18 U.S.C. § 3553.

Respectfully submitted,

DATED: September 6, 2022        By  */s/ Charles C. Brown*
                                                   CHARLES C. BROWN, ESQ.

# I.
# INTRODUCTION

The facts of this case need little repeating. John Walthall, a deeply troubled man, concocted an outlandish plot to avenge himself against any and everyone who he felt contributed to his twisted fate. Various government informants and undercover agents documented his fantastical rants, and he was convicted, again, of solicitation to commit a crime of violence in violation of 18 U.S.C. §§373(a). Though he has just one prior conviction of note, both the government and probation office recommend that Mr. Walthall receive the statutory maximum punishment of 240-months. The defense contends that the recommended 20-year sentence is far greater than necessary to further the ends of justice in this case.

The defense requests that Mr. Walthall be sentenced to a term 120-months to be run concurrent to the sentence Mr. Walthall is currently serving. Mr. Walthall's personal history and characteristics support such a sentence. A 120-month term of incarceration is sufficient to advance all the legitimate purposes of sentencing and is enough to deter Mr. Walthall from committing any future violations of the law.

# II.
# DISCUSSION

Consideration of the factors set forth in 18 U.S.C. § 3553(a), as applied to the circumstances of the instant offense and to Mr. Walthall, supports the imposition of a sentence of 120-months.

**A.     The Section 3553(a) Sentencing Mandate: The Parsimony Provision.**

The overriding principle and basic mandate of Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to achieve the four purposes of sentencing set forth in Section 3553(a)(2):

  (1) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide just punishment).

  (2) deterrence.

  (3) incapacitation (to protect the public from further crimes); and

  (4) rehabilitation (to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner).

The sufficient-but-not-greater-than-necessary requirement is often called the "parsimony provision." The Parsimony Provision is not just another factor to be considered along with the others set forth in Section 3553(a). Instead, the concept of parsimony sets an independent limit on the sentence a court may impose. *See United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989).

**B. The Section 3553(a) Factors**

In determining the sentence minimally sufficient to comply with the Section 3553(a)(2) purposes of sentencing, the court must consider several factors listed in Section 3553(a). These factors are:

  (1) the nature and circumstances of the offense and the history and characteristics of the defendant.

  (2) the kinds of sentence available.

  (3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range.

  (4) the need to avoid unwarranted sentencing disparity; and

  (5) the need to provide restitution where applicable.

18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7).

These factors are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

### C. The Court is Not Required to Impose a 10-Level Enhancement Under the Guidelines Under USSG § 2A1.5 and USSG § 3A1.2(a).

The government and the probation office argue that a four-level enhancement under § 2A1.5(b) and the six-level enhancement under § 3A1.2(a) are appropriate in this case. The Probation Office concludes that § 2A1.5(a) applies because "involved the offer or receipt of anything of pecuniary value for undertaking the murder. Here, Walthall offered to pay a total of five million dollars for the murder of all of the intended victims, or one million dollars each." PSR ¶ 12.

Though technically applicable, these enhancements greatly distort and unfairly inflates Mr. Walthall's sentencing exposure. It is important to note however, that the Court is not bound by the mechanical application of this provision. These specific offense characteristics and victim related adjustments, like all other Guidelines, are advisory and Guidelines with which a sentencing judge is empowered to disagree, when the circumstances in an individual case warrant. Acceding to the Court's confirmation of the advisory only use of the Sentencing Guidelines, the circuits that recently have addressed the crack/powder differential in sentencing a career offender have concluded that "district judges are at liberty to reject any Guideline on policy grounds-though they must act reasonably when using that power." *United States v. Mitchell*, 624 F.3d 1023, 1028–29 (9th Cir. 2010). The court properly recognized that it could give less deference to or depart from the career offender provisions based on either the defendant's individual circumstances or a general policy disagreement with the provisions. *United States v. Stewart*, 761 F.3d 993, 1004 (9th Cir. 2014).

4

The defense urges the Court to reject those provisions in Mr. Walthall's case. Here, given the fanciful, speculative, and attenuated nature of Mr. Walthall's purported solicitation it would be unfair for example to enhance his sentence based on his offer of a thing of "pecuniary value."  If the Court will recall, at trial the testimony was that Mr. Walthall's "offer" was for interest in a future trust in a gold mine in Canada that the agent would have to create on his own by resorting to a "do-it-yourself" reliance on a legal horn book on wills and trusts.  Such speculative offers should not reasonably form the basis for an enhancement under the Guidelines.

Similarly, a six-level enhancement for "official victim" is also misplaced. Although it appears true that Mr. Walthall's rants were directed at the officials who were responsible for his underlying incarceration, his ideas were so distorted and fantastical, they had no likelihood of success in the real world.  Moreover, even if his wild-eyed plot had even a mote of a chance of success, it was thwarted at its inception as Mr. Walthall was blathering his far-fetched ideas to the jailhouse informants and then later to the undercover FBI agent.

Thus, here, the reasoning behind USSG §2X1.1, though rejected in application by the probation officer, seems more appropriate.  Under this provision the offense level in a solicitation is reduced by three levels when, "the arrest occurs well before the defendant, or any co-conspirator has completed the acts necessary for the substantive offense.  Under such circumstances, a reduction of 3 levels is provided under §2X1.1(b)(1) or (2)."  USSG §2X1.1, *background.*

Here, because there were no acts completed for the substantive offense of "murder," Mr. Walthall' sentence should not be enhanced under the Guidelines.

Thus, the defense proposes the following calculation:

| | |
|---|---|
| Base Offense Level [§ 2A1.5] | 33 |
| No Substantive Act [§ 2X1.1] | -3 |
| **Total Adjusted Offense Level** | **30** |
| Criminal History | III |
| **Advisory Guideline Range** | **121-151** |

## III.

## SENTENCING PRINCIPLES APPLIED TO THIS CASE

Consideration of the factors set forth in 18 U.S.C. § 3553(a), as applied to the circumstances of the instant offense and to Mr. Walthall, supports the imposition of a sentence of no more than 120-months.

**A.    Nature and Circumstances of the Offense**

As has been detailed in numerous pleadings before this court and established during the latest trial, Mr. Walthall hatched a hairbrained plan to kidnap and purportedly harm those he felt responsible for his underlying conviction.  Unbeknownst to Mr. Walthall, he was confiding his "plan" to jailhouse informants and undercover FBI agents who were struggling to understand the feasibility of Mr. Walthall's fanciful ideas but nonetheless benefited from encouraging and then reporting his mad scheme to government officials.  The plan involved hiring a twelve man "hit squad" from Columbia that would be financed by a trust funded by proceeds from a gold-mine in Canada which Mr. Walthall claimed to have a future value in the "millions" of dollars.

Mr. Walthall would supervise the "operation" along with the person he believed to be a relative of Mr. Rodriguez from FCI Lompoc using "lightwave" communication towers and secreted cell phones introduced into the facility by grappling hook or drones.

### B.     History and Characteristics of Defendant

Mr. Walthall is 66 years old.  He will be at least 70 years old before he is released from federal custody. As outlined in the presentence report, he has suffered through numerous serious ailments throughout his life, including back, lung, heart, and brain problems.  He has been seriously hospitalized several times, including being in a coma and on life support in an intensive care unit.  These conditions will only get worse because of his continuing incarceration and advancing age, and it is unlikely that he will receive adequate treatment while in custody.

The Court will also recall the sad testimony of Mr. Walthall himself.  He was a self-described misfit who was bullied from a young age because he was always perceived as "odd" and a "nerd" who lacked basic social skills but found refuge in books and science.  The Court is also aware of Mr. Walthall's serious mental health concerns.  In the past, experts in this case agreed that Mr. Walthall suffers from cognizable delusions and paranoia that have a daily impact on his life.  He is a prisoner of his own mind, living in the isolated and terrible reality he describes in his writings and recordings, a reality in which those closest to him have conspired to imprison and hurt him. The battle within his mind has left him without friends or family. It has led to his incarceration and left him vulnerable to people such as Antonio Rodriguez and Crisanto Trejos.  It left him incapable of adequately defending against the charges in this case, being convinced that his own attorney conspires against him. And as the evidence in this case showed, it is very unlikely that Mr. Walthall will receive any significant psychiatric treatment during his remaining years in custody.

### C. Retribution, Deterrence, and Incapacitation

There is a strong societal interest in punishing individuals who are involved in offenses such as the instant offense. Yet, as discussed in detail above, a mechanical application of the custody ranges set forth in the Sentencing Table invites misapprehending the seriousness of the offense, enhancing rather than avoiding unwarranted sentence disparities, and neglecting the wide array of statutory sentencing factors found in section 3553(a).

Simply put, Mr. Walthall is not a violent offender deserving of a long prison sentence. Given his personal history he is a person who has learned from his mistakes and is not one who is likely to recidivate and poses no ongoing danger to the community - therefore, a long period of incarceration is unnecessary to accomplish the otherwise laudable societal goals of retribution, deterrence, and incapacitation.

### D. Rehabilitation

In addition to promoting respect for the law and to provide just punishment for the offense, the statutory scheme contemplates rehabilitation is an important factor in the sentencing calculus. And by enacting section 3582, Congress explicitly recognized that imprisonment is "not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582.

### E. COVID and Harsh Conditions of Confinement

With crowded conditions, notoriously substandard medical care and constantly shifting populations, prisons were ill-equipped to handle the highly contagious virus, which killed nearly 3,000 prisoners and staff nationwide. https://www.themarshallproject.org/2021/06/30/a-half-million-people-got-covid-19-in-prison-are-officials-ready-for-the-next-pandemic. In the early days of the pandemic, testing within the Bureau of Prisons was limited, and staff at some prisons were told

there was no need to test prisoners and they should just assume everyone had the coronavirus. *Id.* The Justice Department's inspector general found that at some facilities, like FCC Oakdale in Louisiana, which emerged as an early hotspot, those who tested positive for the virus were left in their housing units for days without being isolated. From the start of the pandemic through June 2021, at least 398,627 people in prison tested positive for the illness. That total is a significant undercount. In the early months of the pandemic, testing was inconsistent in many prisons, leading to cases going undiagnosed. https://www.themarshallproject.org/2021/07/01/prisons-have-a-health-care-issue-and-it-starts-at-the-top-critics-say. The Federal Bureau of Prisons also had a policy of removing cases and deaths from its reports. As a result, by the spring of 2021, we could no longer accurately determine new cases in federal prisons, which had more people infected than any other system. *Id.*

Sadly, Mr. Walthall had to endure confinement during the heart of the pandemic. As a result, the conditions of his confinement were harsher than most. This is indeed a mitigating factor that the Court should consider when fashioning his sentence.

## IV.
## CONCLUSION

For the reasons stated above, Mr. Walthall respectfully requests that the Court impose a sentence of 120-months. Such a sentence is sufficient but not greater than necessary to further the interests of justice in this case.

Respectfully submitted,

DATED: September 6, 2022  By  */s/ Charles C. Brown*
                                CHARLES C. BROWN, ESQ.

9